705 So.2d 643 (1998)
Martha TRES, as Personal Representative of the Estate of Julio R. Paula, deceased, Appellant,
v.
ROYAL SURPLUS LINES INSURANCE COMPANY, Appellee.
No. 97-292.
District Court of Appeal of Florida, Third District.
January 21, 1998.
*644 Grossman & Roth; Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel D. Eaton, Miami, for appellant.
Rumberg, Kirk & Caldwell and John Bond Atkinson and David J. Pyper, Miami, for appellee.
Before GERSTEN, FLETCHER and SHEVIN, JJ.
FLETCHER, Judge.
Martha Tres, in her capacity as personal representative of the estate of Julio R. Paula, appeals a summary judgment entered in favor of Royal Surplus Lines Insurance Company [Royal]. We affirm.
Julio R. Paula died as the result of an accident which occurred while he was operating a vehicle owned or otherwise in the control of Con-Struct Erectors, Inc. [Con-Struct]. The primary insurance policy (issued by Home Insurance Co.) on the vehicle contained liability limits of $1,000,000, with uninsured motorist [UM] coverage in the amount of $300,000. For several years Construct had elected this UM amount after its primary insurer had offered UM coverage up to the policy's million-dollar liability limit as required by section 627.727(1), Florida Statutes (1993). The reason advanced by Con-Struct for purchasing less than the full amount of available UM coverage on the primary policy was its cost.
Con-Struct also had obtained a non-primary policy from Royal, a $1,000,000 commercial umbrella liability policy with an endorsement which specifically excluded UM coverage (again because of the cost). It is this umbrella policy which is the basis for Tres' action.
Tres' contention is that Royal, when it issued the umbrella policy, failed to comply with section 627.727(2), Florida Statutes (1993).[1] Specifically Tres argues that Royal did not make UM coverage for the umbrella policy available to Con-Struct during the application process, therefore (Tres contends) Con-Struct did not make an informed rejection of UM coverage (as there was nothing to reject), thus the umbrella policy should be construed to include UM coverage up to the amount of $1,000,000. Tres relies on Carbonell v. Automobile Insurance Co. of Hartford, Conn., 562 So.2d 437 (Fla. 3d DCA *645 1990) and like cases[2] to reach this conclusion.
First we note that section 627.727(2), Florida Statutes (1993), which deals with non-primary policies as here involved, differs substantially from section 627.727(1), which deals with primary policies as involved in Carbonell (and Adams and Nationwide). Section 627.727(1)[3] mandates that a primary policy include UM coverage unless an informed, knowing, written rejection of such coverage is made by the insured on the proper form. The purpose of this is
"to assure that an insured appreciates the availability of UM coverage and makes a knowledgeable and deliberate decision to accept or reject it."
Travelers Ins. Co. v. Quirk, 583 So.2d 1026, 1029 (Fla.1991).
On the other hand, section 627.727(2) does not contain the same requirements. Basically it only requires an issuer of a non-primary policy to notify an applicant of the availability of UM coverage. Travelers Ins. Co. v. Quirk, 583 So.2d at 1029. Assuming that no UM availability notice was given by Royal to Con-Struct, nonetheless the record reflects that Con-Struct was aware of Royal's duty to offer UM coverage but that Con-Struct deliberately rejected any non-primary UM coverage because of its cost. As Con-Struct already had the knowledge that Royal's section 627.727(2) notice would have given it, any such notice by Royal to Con-Struct would have been surplusage. The ultimate intention of the statutemaking known to Con-Struct the availability of non-primary UM coverage so it could make a choicewas satisfied. As a consequence we affirm the summary judgment in favor of Royal.
Affirmed.
NOTES
[1] Which reads:

"The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured. The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less." (emphasis supplied)
[2] Adams v. Aetna Cas. & Sur. Co., 574 So.2d 1142 (Fla. 1st DCA), rev. dismissed, 581 So.2d 1307 (Fla.1991); Nationwide Mut. Fire Ins. Co. v. Kauffman, 495 So.2d 1184 (Fla. 4th DCA 1986), rev. dismissed, 511 So.2d 999 (Fla.1987).
[3] Which reads in pertinent part:

"[T]he coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.
....
The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: `You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully.' If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds."